# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 15-117V
Filed: January 26, 2018
Not for Publication

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| H.S., a Minor, by his PARENT AND NATURAL GUARDIAN, AMANDA SEIDERS,       Petitioner, v. SECRETARY OF HEALTH AND HUMAN SERVICES,       Respondent. | Damages decision based on stipulation; Hib vaccine; acute cerebellar ataxia |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

John R. Howie, Jr., Dallas, TX, for petitioner.
Claudia B. Gangi, Washington, DC, for respondent.

**MILLMAN, Special Master**

## DECISION AWARDING DAMAGES[1]

On January 25, 2018, the parties filed the attached stipulation in which they agreed to settle this case and described the settlement terms. Petitioner alleges that her son, H.S., suffered acute cerebellar ataxia that was caused by his December 12, 2013 receipt of Haemophilus influenzae type B ("Hib") vaccine. Respondent denies that Hib vaccine caused H.S.'s acute cerebellar ataxia or any other injury. Nonetheless, the parties agreed to resolve this matter informally.

---

[1] Because this unpublished decision contains a reasoned explanation for the special master's action in this case, the special master intends to post this unpublished decision on the United States Court of Federal Claims's website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17, 2002). Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioner has 14 days to identify and move to delete such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall delete such material from public access.

The undersigned finds the terms of the stipulation to be reasonable. The court hereby adopts the parties' said stipulation, attached hereto, and awards compensation in the amount and on the terms set forth therein. Pursuant to the stipulation, the court awards the following vaccine compensation payments under 42 U.S.C. § 300aa-15(a) (2012):

a. A lump sum of $899,387.81, representing compensation for first year life care expenses ($308,087.81) and trust seed funds ($591,300.00), in the form of a check payable to Regions Bank, as trustee of the grantor reversionary trust established for the benefit of H.S.;

b. A lump sum of $1,075,383.88, representing compensation for lost future earnings ($825,383.88) and pain and suffering ($250,000.00), in the form of a check payable to petitioner as guardian/conservator of the estate of H.S. for the benefit of H.S.;

c. A lump sum of $32,240.10, representing compensation for past unreimbursable expenses, in the form of a check payable to petitioner; and

d. An amount sufficient to purchase the annuity contract described in paragraph 10 of the stipulation.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[2]

**IT IS SO ORDERED.**

Dated: January 26, 2018                                                                     s/ Laura D. Millman
                                                                                                      Laura D. Millman
                                                                                                      Special Master

---

[2] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
OFFICE OF SPECIAL MASTERS

| | |
|---|---|
| H.S., a minor, by his PARENT AND NATURAL GUARDIAN, AMANDA SEIDERS, ) ) ) ) Petitioner, ) v. ) ) SECRETARY OF HEALTH AND HUMAN ) SERVICES, ) ) Respondent. ) ) | No. 15-117V Special Master Millman ECF |

## STIPULATION

The parties hereby stipulate to the following matters:

1. On behalf of her son, H.S., petitioner filed a petition for vaccine compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10 to -34 (the "Vaccine Program"). The petition seeks compensation for injuries allegedly related to H.S.'s receipt of the Haemophilus influenzae type B ("Hib") vaccine, which vaccine is contained in the Vaccine Injury Table (the "Table"), 42 C.F.R. § 100.3 (a).

2. H.S. received his Hib immunization on or about December 12, 2013.

3. The vaccine was administered within the United States.

4. Petitioner alleges that H.S. suffered from acute cerebellar ataxia as a result of his Hib immunization. Petitioner further alleges that H.S. experienced residual effects of this injury for more than six months.

5. Petitioner represents that there has been no prior award or settlement of a civil action for damages on behalf of H.S. as a result of his condition.

6. Respondent denies that H.S. suffered from acute cerebellar ataxia as a result of his Hib

-1-

immunization and denies that the Hib vaccine caused him any other injury.

7. Maintaining their above-stated positions, the parties nevertheless now agree that the issues between them shall be settled and that a decision should be entered awarding the compensation described in paragraph 8 of this Stipulation.

8. As soon as practicable after an entry of judgment reflecting a decision consistent with the terms of this Stipulation, and after petitioner has filed an election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), the Secretary of Health and Human Services will issue the following vaccine compensation payments:

    a. A lump sum of $899,387.81, which amount represents compensation for first year life care expenses ($308,087.81) and trust seed funds ($591,300.00), in the form of a check payable to Regions Bank, as trustee of the grantor reversionary trust established for the benefit of H.S.;

    b. A lump sum of $1,075,383.88, which amount represents compensation for lost future earnings ($825,383.88) and pain and suffering ($250,000.00), in the form of a check payable to petitioner as guardian(s)/conservator(s) of the estate of H.S. for the benefit of H.S. No payments shall be made until petitioner provides respondent with documentation establishing that she has been appointed as guardian(s)/conservator(s) of H.S.'s estate;

    c. A lump sum of $32,240.10, which amount represents compensation for past unreimbursable expenses, in the form of a check payable to petitioner, Amanda Seiders; and

    d. An amount sufficient to purchase the annuity contract described in paragraph 10 below, paid to the life insurance company from which the annuity will be purchased (the "Life Insurance Company").

9. The Life Insurance Company must have a minimum of $250,000,000 capital and surplus, exclusive of any mandatory security valuation reserve. The Life Insurance Company must have one of the following ratings from two of the following rating organizations:

    a. A.M. Best Company: A++, A+, A+g, A+p, A+r, or A+s;

    b. Moody's Investor Service Claims Paying Rating: Aa3, Aa2, Aa1, or Aaa;

c. Standard and Poor's Corporation Insurer Claims-Paying Ability Rating: AA-, AA, AA+, or AAA;

d. Fitch Credit Rating Company, Insurance Company Claims Paying Ability Rating: AA-, AA, AA+, or AAA.

10. The Secretary of Health and Human Services agrees to purchase an annuity contract from the Life Insurance Company for the benefit of H.S., pursuant to which the Life Insurance Company will agree to make payments periodically to the trustee for the following items of compensation:

   a. For future unreimbursable Blue Cross Blue Shield Maximum-Out-of-Pocket expenses, beginning on the first anniversary of the date of judgment, an annual amount of $6,850.00 to be paid up to the anniversary of the date of judgment in year 2038. Then, beginning on the anniversary of the date of judgment in year 2038, an annual amount of $3,500.00 to be paid up to the anniversary of the date of judgment in year 2053, all amounts increasing at the rate of five percent (5%), compounded annually from the date of judgment.

   b. For future unreimbursable Blue Cross Blue Shield Premium expenses, beginning on the anniversary of the date of judgment in year 2036, an annual amount of $4,999.92 to be paid up to the anniversary of the date of judgment in year 2038. Then, on the anniversary of the date of judgment in year 2038, a lump sum of $5,433.24. Then, on the anniversary of the date of judgment in year 2039, a lump sum of $5,560.56. Then, on the anniversary of the date of judgment in year 2040, a lump sum of $5,767.44. Then, on the anniversary of the date of judgment in year 2041, a lump sum of $5,937.24. Then, on the anniversary of the date of judgment in year 2042, a lump sum of $6,022.20. Then, on the anniversary of the date of judgment in year 2043, a lump sum of $6,149.52. Then, on the anniversary of the date of judgment in year 2044, a lump sum of $6,276.84. Then, on the anniversary of the date of judgment in year 2045, a lump sum of $6,356.40. Then, on the anniversary of the date of judgment in year 2046, a lump sum of $6,441.36. Then, on the anniversary of the date of judgment in year 2047, a lump sum of $6,483.72. Then, on the anniversary of the date of judgment in year 2048, a lump sum of $6,526.20. Then, on the anniversary of the date of judgment in year 2049, a lump sum of $6,568.68. Then, on the anniversary of the date of judgment in year 2050, a lump sum of $6,611.04. Then, on the anniversary of the date of judgment in year 2051, a lump sum of $6,696.00. Then, on the anniversary of the date of judgment in year 2052, a lump sum of $6,780.84, all amounts increasing at the rate of five percent (5%), compounded annually from the date of judgment.

   c. For future unreimbursable Medicare Part B Premium, Medicare Part B Deductible, Medicare Part D, and Medigap expenses, beginning on the anniversary of the date of

judgment in year 2053, an annual amount of $8,865.52 to be paid up to the anniversary of the date of judgment in year 2077. Thereafter, beginning on the anniversary of the date of judgment in year 2077, an annual amount of $5,008.52 to be paid for the remainder of H.S.'s life, all amounts increasing at the rate of five percent (5%), compounded annually from the date of judgment.

d. For future unreimbursable Dental/Hygienist expenses, beginning on the first anniversary of the date of judgment, an annual amount of $103.00 to be paid up to the anniversary of the date of judgment in year 2031, increasing at the rate of five percent (5%), compounded annually from the date of judgment.

e. For future unreimbursable Evaluation and Treatment at Duke University Medical Center/Mayo Clinic expenses, beginning on the anniversary of the date of judgment in year 2038, an annual amount of $534.00 to be paid for the remainder of H.S.'s life, increasing at the rate of five percent (5%), compounded annually from the date of judgment.

f. For future unreimbursable Physical Therapy, Occupational Therapy Evaluation, Occupational Therapy, Therapeutic Horseback Riding, Helmet, Riding Boots, Aqua Therapy, Special Needs Recreational Gym, and Special Needs Sports League expenses, beginning on the first anniversary of the date of judgment, an annual amount of $41,539.90 to be paid up to the anniversary of the date of judgment in year 2025. Then, beginning on the anniversary of the date of judgment in year 2025, an annual amount of $41,189.90 to be paid up to the anniversary of the date of judgment in year 2031. Then, on the anniversary of the date of judgment in year 2031, a lump sum of $7,387.94. Thereafter, beginning on the anniversary of the date of judgment in year 2032, an annual amount of $7,366.61 to be paid for the remainder of H.S.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

g. For future unreimbursable Pain Management and Rehabilitation Parking, Travel for Duke University Medical Center/Mayo Clinic, Therapy Mileage, Therapeutic Horseback Riding Mileage, Aqua Therapy Mileage, Special Needs Recreational Gym Mileage, Behavioral Counseling Mileage, Psychiatrist Mileage, and Monarch School Mileage expenses, beginning on the first anniversary of the date of judgment, an annual amount of $6,431.19 to be paid up to the anniversary of the date of judgment in year 2024. Then, on the anniversary of the date of judgment in year 2024, a lump sum of $6,543.80. Then, beginning on the anniversary of the date of judgment in year 2025, an annual amount of $6,412.90 to be paid up to the anniversary of the date of judgment in year 2031. Thereafter, beginning on the anniversary of the date of judgment in year 2031, an annual amount of $3,176.37 to be paid for the remainder of H.S.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

h. For future unreimbursable Advil expenses, beginning on the first anniversary of the date of judgment, an annual amount of $209.70 to be paid for the remainder of H.S.'s

life, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

i. For future unreimbursable Diaper, Wipe, Glove, Chux, Washable Chux, and Mattress Pad expenses, beginning on the first anniversary of the date of judgment, an annual amount of $961.71 to be paid up to the anniversary of the date of judgment in year 2031, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

j. For future unreimbursable Quickie Wheelchair expenses, on the anniversary of the date of judgment in year 2025, a lump sum of $999.00. Then, on the anniversary of the date of judgment in year 2032, a lump sum of $999.00. Then, on the anniversary of the date of judgment in year 2039, a lump sum of $999.00. Then, on the anniversary of the date of judgment in year 2046, a lump sum of $999.00, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

k. For future unreimbursable Push Chair, Portable Suitcase Ramp, iPad Tanga2, and Video Monitor expenses, on the anniversary of the date of judgment in year 2023, a lump sum of $1,108.94. Then, on the anniversary of the date of judgment in year 2028, a lump sum of $702.99. Then, on the anniversary of the date of judgment in year 2033, a lump sum of $508.99. Then, on the anniversary of the date of judgment in year 2038, a lump sum of $702.99. Thereafter, beginning on the anniversary of the date of judgment in year 2039, an annual amount of $121.20 to be paid for the remainder of H.S.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

l. For future unreimbursable Special Needs Apps for iPad, Special Needs Toys, House Alarm, Assistive Device, Sturdy Shoe, and Vet Care and Supplies for Dog expenses, beginning on the first anniversary of the date of judgment, an annual amount of $2,901.40 to be paid for the remainder of H.S.'s life, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

m. For future unreimbursable Special Needs Tricycle expenses, on the anniversary of the date of judgment in year 2025, a lump sum of $2,106.00, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

n. For future unreimbursable Tricycle Flag and Pole, Reflective Vest, and Spio Vest expenses, beginning on the first anniversary of the date of judgment, an annual amount of $457.55 to be paid up to the anniversary of the date of judgment in year 2031, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

o. For future unreimbursable Assistive Technology Evaluation, on the anniversary of the date of judgment in year 2021, a lump sum of $2,250.00. Then, on the anniversary of the date of judgment in year 2024, a lump sum of $2,250.00. Then, on the

anniversary of the date of judgment in year 2027, a lump sum of $2,250.00. Then, on the anniversary of the date of judgment in year 2030, a lump sum of $2,250.00. Then, on the anniversary of the date of judgment in year 2035, a lump sum of $2,250.00. Thereafter, beginning on the anniversary of the date of judgment in year 2036, an annual amount of $450.00 to be paid for the remainder of H.S.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

p. For future unreimbursable Service Dog expenses, on the anniversary of the date of judgment in year 2023, a lump sum of $17,000.00. Then, on the anniversary of the date of judgment in year 2030, a lump sum of $17,000.00. Then, on the anniversary of the date of judgment in year 2037, a lump sum of $17,000.00. Thereafter, beginning on the anniversary of the date of judgment in year 2038, an annual amount of $2,428.57 to be paid for the remainder of H.S.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

q. For future unreimbursable Case Management expenses, beginning on the first anniversary of the date of judgment, an annual amount of $3,060.00 to be paid for the remainder of H.S.'s life, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

r. For future unreimbursable Van Conversion expenses, on the anniversary of the date of judgment in year 2028, a lump sum of $23,500.00. Then, on the anniversary of the date of judgment in year 2038, a lump sum of $23,500.00. Thereafter, beginning on the anniversary of the date of judgment in year 2039, an annual amount of $2,350.00 to be paid for the remainder of H.S.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

s. For future unreimbursable Monarch School expenses, beginning on the first anniversary of the date of judgment, an annual amount of $47,500.00 to be paid up to the anniversary of the date of judgment in year 2023. Then, beginning on the anniversary of the date of judgment in year 2023, an annual amount of $32,700.00 to be paid up to the anniversary of the date of judgment in year 2031, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

t. For future unreimbursable Home Modification expenses, on the anniversary of the date of judgment in year 2030, a lump sum of $50,000.00, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

u. For future unreimbursable Generator Maintenance expenses, beginning on the first anniversary of the date of judgment, an annual amount of $315.00 to be paid up to the anniversary of the date of judgment in year 2024, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

    v. For future unreimbursable Attendant Care expenses, beginning on the first anniversary of the date of judgment, an annual amount of $110,036.25 to be paid up to the anniversary of the date of judgment in year 2023. Then, beginning on the anniversary of the date of judgment in year 2023, an annual amount of $102,555.00 to be paid up to the anniversary of the date of judgment in year 2031, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

    w. For future unreimbursable Adult Attendant Care expenses, beginning on the anniversary of the date of judgment in year 2031, an annual amount of $197,100.00 to be paid up to the anniversary of the date of judgment in year 2067. Thereafter, beginning on the anniversary of the date of judgment in year 2070, an annual amount of $197,100.00 to be paid for the remainder of H.S.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

At the sole discretion of the Secretary of Health and Human Services, the periodic payments may be provided to the trustee in monthly, quarterly, annual or other installments. The "annual amounts" set forth above describe only the total yearly sum to be paid to the trustee and do not require that the payment be made in one annual installment. The trustee will continue to receive the annuity payments from the Life Insurance Company only so long as H.S. is alive at the time that a particular payment is due. Written notice to the Secretary of Health and Human Services, the trustee, and the Life Insurance Company shall be provided within twenty (20) days of H.S.'s death.

    11. The annuity contract will be owned solely and exclusively by the Secretary of Health and Human Services and will be purchased as soon as practicable following the entry of a judgment in conformity with this Stipulation. The parties stipulate and agree that the Secretary of Health and Human Services and the United States of America are not responsible for the payment of any sums other than the amounts set forth in paragraph 8 herein and the amounts awarded pursuant to paragraph 12 herein, and that they do not guarantee or insure any of the future annuity payments. Upon the purchase of the annuity contract, the Secretary of Health and

Human Services and the United States of America are released from any and all obligations with respect to future annuity payments.

12. As soon as practicable after the entry of judgment on entitlement in this case, and after petitioner has filed both a proper and timely election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), and an application, the parties will submit to further proceedings before the special master to award reasonable attorneys' fees and costs incurred in proceeding upon this petition.

13. Petitioner and her attorney represent that they have identified to respondent all known sources of payment for items or services for which the Program is not primarily liable under 42 U.S.C. § 300aa-15(g), including State compensation programs, insurance policies, Federal or State health benefits programs (other than Title XIX of the Social Security Act (42 U.S.C. § 1396 et seq.)), or entities that provide health services on a pre-paid basis.

14. Payments made pursuant to paragraph 8 and any amounts awarded pursuant to paragraph 12 of this Stipulation will be made in accordance with 42 U.S.C. § 300aa-15(i), subject to the availability of sufficient statutory funds.

15. The parties and their attorneys further agree and stipulate that, except for any award for attorneys' fees, and litigation costs, and past unreimbursable expenses, the money provided pursuant to this Stipulation either immediately or as part of the annuity contract, will be used solely for the benefit of H.S., as contemplated by a strict construction of 42 U.S.C. §300aa-15(a) and (d), and subject to the conditions of 42 U.S.C. § 300aa-15(g) and (h).

16. Petitioner represents that she presently is, or within 90 days of the date of judgment will become, duly authorized to serve as guardian/conservator of H.S.'s estate under the laws of the State of Texas. No payments pursuant to this Stipulation shall be made until petitioner

-8-

provides the Secretary with documentation establishing her appointment as guardian/conservator of H.S.'s estate. If petitioner is not authorized by a court of competent jurisdiction to serve as guardian/conservator of the estate of H.S. at the time a payment pursuant to this Stipulation is to be made, any such payment shall be paid to the party or parties appointed by a court of competent jurisdiction to serve as guardian(s)/ conservator(s) of the estate of H.S. upon submission of written documentation of such appointment to the Secretary.

17. In return for the payments described in paragraphs 8 and 12, petitioner, in her individual capacity and as legal representative of H.S., on behalf of herself, H.S., and his heirs, executors, administrators, successors or assigns, does forever irrevocably and unconditionally release, acquit and discharge the United States and the Secretary of Health and Human Services from any and all actions or causes of action (including agreements, judgments, claims, damages, loss of services, expenses and all demands of whatever kind or nature) that have been brought, could have been brought, or could be timely brought in the Court of Federal Claims, under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300 aa-10 et seq., on account of, or in any way growing out of, any and all known or unknown, suspected or unsuspected personal injuries to or death of H.S. resulting from, or alleged to have resulted from the Hib vaccination administered on or about December 12, 2013, as alleged by petitioner in a petition for vaccine compensation filed on or about February 6, 2015, in the United States Court of Federal Claims as petition No. 15-117V.

18. If H.S. should die prior to entry of judgment, this agreement shall be voidable upon proper notice to the Court on behalf of either or both of the parties.

19. If the special master fails to issue a decision in complete conformity with the terms of this Stipulation or if the Court of Federal Claims fails to enter judgment in conformity with a

decision that is in complete conformity with the terms of this Stipulation, then the parties' settlement and this Stipulation shall be voidable at the sole discretion of either party.

20. This Stipulation expresses a full and complete negotiated settlement of liability and damages claimed under the National Childhood Vaccine Injury Act of 1986, as amended, except as otherwise noted in paragraph 12 above. There is absolutely no agreement on the part of the parties hereto to make any payment or to do any act or thing other than is herein expressly stated and clearly agreed to. The parties further agree and understand that the award described in this Stipulation may reflect a compromise of the parties' respective positions as to liability and/or amount of damages, and further, that a change in the nature of the injury or condition or in the items of compensation sought, is not grounds to modify or revise this agreement.

21. Petitioner hereby authorizes respondent to disclose documents filed by petitioner in this case consistent with the Privacy Act and the routine uses described in the National Vaccine Injury Compensation Program System of Records, No. 09-15-0056.

22. This Stipulation shall not be construed as an admission by the United States or the Secretary of Health and Human Services that H.S. suffered from acute cerebellar ataxia as a result of his Hib immunization or that his condition is a sequelae of his alleged injury or any other vaccine injury.

23. All rights and obligations of petitioner hereunder shall apply equally to petitioner's heirs, executors, administrators, successors, and/or assigns as legal representatives of H.S.

END OF STIPULATION

/

/

/

Respectfully submitted,

PETITIONER:

*/s/ Amanda Seiders*

AMANDA SEIDERS

ATTORNEY OF RECORD FOR PETITIONER:

*/s/ John R. Howie, Jr.*

JOHN R. HOWIE, JR.
HOWIE LAW, P.C.
4040 North Central Expressway, Suite 850
Dallas, TX 75204
Tel: (214) 622-6340

AUTHORIZED REPRESENTATIVE OF THE ATTORNEY GENERAL:

*/s/ Catharine E. Reeves*

CATHARINE E. REEVES
Deputy Director
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146

AUTHORIZED REPRESENTATIVE OF THE SECRETARY OF HEALTH AND HUMAN SERVICES:

*/s/ Narayan Nair*

NARAYAN NAIR, M.D.
Director, Division of Injury
Compensation Programs
Healthcare Systems Bureau
U.S. Department of Health
and Human Services
5600 Fishers Lane
Parklawn Building, Mail Stop 08N146B
Rockville, MD 20857

ATTORNEY OF RECORD FOR RESPONDENT:

*/s/ Claudia B. Gangi*

CLAUDIA B. GANGI
Senior Trial Attorney
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146
Tel: (202) 616-4138

Dated: 1-25-18